UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER WOLF,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:13-cv-865

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  On November 4, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #11).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 56 years of age on his alleged disability onset date.  (Tr. 110).  He successfully completed high school and worked previously as a general assembler and convenience store clerk.  (Tr. 24, 37).  Plaintiff applied for benefits on February 23, 2009, alleging that he had been disabled since June 1, 2008, due to breathing problems, diabetes, gout, and bladder problems.  (Tr. 110-16, 158).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 69-113).  On December 21, 2010, Plaintiff appeared before ALJ Thomas Walters with testimony presented by Plaintiff and a vocational expert.  (Tr. 33-53).  In a written decision dated December 30, 2010, the ALJ determined that Plaintiff was not disabled.  (Tr. 19-25).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 10-12).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 21, 2008, Plaintiff reported to the emergency room complaining of "chest pain and palpitations for the last hour."  (Tr. 205).  An EKG examination revealed that Plaintiff was experiencing tachycardia.  (Tr. 206).  X-rays of Plaintiff's chest revealed "no evidence for acute

disease." (Tr. 204). Plaintiff was treated with medication after which the results of a EKG were "normal." (Tr. 206). The following day Plaintiff participated in a heart catheterization procedure the results of which revealed "mild to moderate coronary artery disease." (Tr. 226).

On March 12, 2009, Plaintiff completed a report regarding his activities. (Tr. 165-72). Plaintiff reported that he cares for his dog, prepares meals, cleans, sweeps, dusts, and washes laundry. (Tr. 165-67). Plaintiff also reported that he rakes and mows his lawn, but experiences difficulty doing so. (Tr. 167). Plaintiff reported that he drives and shops. (Tr. 168). Plaintiff also reported that he watches television and goes out to watch his friends play pool. (Tr. 169).

On April 11, 2009, Plaintiff was examined by Dr. Jared Griffith. (Tr. 228-30). Plaintiff reported that he was experiencing gout, diabetes, and "breathing and bladder problems." (Tr. 228). With respect to his gout, Plaintiff reported that he experiences "difficulty standing for any more than a couple of minutes at a time as well as difficulty walking for more than five minutes." (Tr. 228). Plaintiff also reported, however, that "he does not have any anti-gout medications." (Tr. 228). A physical examination revealed the following:

> EXTREMITIES AND MUSCULOSKELETAL: There is swelling about the right ankle and right knee. There is also bony deformity about the ankle. There is positive Apley's compression test of the right knee. There is decreased range of motion of the right ankle and dorsi/plantarflexion both limited to 20 degrees. Knee demonstrates full range of motion. Drawer sign is negative of the knee. There is tophus formation along the right olecranon process. There is also swelling of the right wrist. The patient is unable to completely form a fist on the right side and there is decreased grip strength noted of the right wrist as well as volar and dorsal flexor strength and flexor and extensor strength of the right elbow, all gauged at 4/5. The patient has no difficulty getting on and off the examination table but there is moderate difficulty with heel toe walking and squatting. Left hand has full dexterity.

4

> NEURO: Reflexes are present but diminished in all extremities. Monofilament and vibratory sensation are preserved throughout. Romberg testing is negative. Finger-nose-finger evaluation is appropriate. There is no disorientation noted.

(Tr. 230).

On June 5, 2009, Plaintiff participated in an electrocardiogram examination the results of which revealed:

> This electrocardiogram demonstrates a normal sinus rhythm with first-degree atrioventricular block. Evidence suggestive of a previous anterolateral infarction is noted. ST segment depression and T-AVE inversion in leads I and AVL suggest some anterolateral ischemia. No evidence of acute transmural infarction. No previous tracings are available for comparison.

(Tr. 240).

On May 7, 2010, Plaintiff participated in an electrocardiogram examination the results of which revealed:

> This electrocardiogram demonstrates a normal sinus rhythm with left axis deviation. A QS pattern in $V_1$ through $V_2$ suggests a possible previous anteroseptal infarction with minimal ST-segment elevation in those leads. No previous electrocardiograms are available for comparison.

(Tr. 261).

Treatment notes dated October 30, 2010, indicate that Plaintiff exhibited "full range of motion of the upper and lower extremities" with no evidence of edema or strength or neurological limitation. (Tr. 289).

On November 4, 2010, Plaintiff participated in a cardiac stress test the results of which revealed:

> 1.   Negative lexiscan stress portion of the study.

5

>     2.   No reversible perfusion defects to suggest myocardial ischemia.
>     3.   No fixed perfusion defects to indicate prior myocardial infarction.
>     4.   LVEF 48% and is below normal range.  Visually, left ventricular systolic function is at the lower limits of normal.
>     5.   No regional wall motion abnormalities.
>     6.   Normal myocardial perfusion scan.

(Tr. 282-83).

Treatment notes dated November 6, 2010, indicate that Plaintiff was "pain-free regarding his gout." (Tr. 296). On November 15, 2010, Plaintiff participated in a venous Doplar examination of his left lower extremity the results of which revealed no evidence of deep venous thrombosis. (Tr. 266).

On November 15, 2010, Plaintiff was examined by Dr. Bernard Eisenga. (Tr. 273-75). The results of a physical examination revealed the following:

> General: This is an obese, haggard-appearing male, who was asleep, but easily roused. No jaundice, diaphoresis, anxiety, cyanosis, or pallor noted. Vital signs: Temperature 36.4, heart rate 85, respiratory rate 16, blood pressure 118/71, 99% oxygen saturation on 1 liter nasal cannula. Weight is 127.27 kg, height is 172.72 cm. Skin is warm and dry, with patches of psoriasis on the arms. Otherwise, no lesions, rashes, or ulcers. Lymph: no lymphadenopathy. Head: Atraumatic, normocephalic. Eyes: Pupils are equally reactive to light bilaterally, with no scleral icterus or conjunctival injection. EOMs are full in all directions. Ears: No drainage. Hearing is acute. Nose: No drainage or epistaxis. Nares are clear throughout. No wheezes, rales, or rhonchi. Heart: Distant heart sounds, best heard in the right anterior chest. Regular rate and rhythm. No murmurs, rubs, clicks, or heaves. Peripheral pulses are +1 and regular. Abdomen is grossly obese, soft, and nontender. No masses noted. Bowel sounds are active in all quadrants. No distention. Extremities: No extremity edema. Moving all extremities equally well. There is a 4 x 2 cm semi-firm but movable mass on the right elbow, which the patient says he has had for 2 years. No induration, erythema, or tenderness. No skin breakdown, ulcers, bleeding, or pus noted. Otherwise, no body

> deformities.  Neurologic: Alert and oriented x3.  Cranial nerves II
> through XII grossly intact.

(Tr. 274).

At the administrative hearing, Plaintiff testified that since he began taking medication to treat his gout he only experiences episodes of gout "once or twice a year," but that each episode lasts for 4-6 weeks. (Tr. 43). Plaintiff testified that he was unable to be on his feet for more than five to 10 minutes and was unable to walk more than 20 to 30 yards at one time. (Tr. 44-45). Plaintiff reported that he was able to do various chores around the house provided he was not on his feet for a prolonged period of time. (Tr. 45-46). Plaintiff also reported that he now checks his blood sugar on a regular basis and that his blood sugar has been normal of late. (Tr. 46).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

    The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

    The ALJ determined that Plaintiff suffered from: (1) shortness of breath; (2) gout; (3) diabetes; and (4) mild coronary heart disease, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-22). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he "cannot perform prolonged walking"; (2) he cannot work around moving machinery or at unprotected heights; and (3) he requires a clean air environment. (Tr. 22). A vocational expert testified at the administrative hearing that if Plaintiff were limited to the extent recognized by the ALJ, Plaintiff would still be able to perform his past relevant work as a general assembler and convenience store

clerk. (Tr. 50-52). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

I.        **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

As noted above, Plaintiff testified at the administrative hearing that he was limited to a far greater extent than recognized by the ALJ. Specifically, Plaintiff testified that he was unable to walk more than 20-30 yards at one time or be on feet for more than 5-10 minutes. The ALJ discounted Plaintiff's subjective allegations, a determination which Plaintiff now challenges.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

9

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at

*16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

In assessing Plaintiff's credibility, the ALJ noted that the medical evidence simply did not support Plaintiff's allegations of extreme limitation. The ALJ also noted that the record did not indicate that Plaintiff experienced greater non-exertional impairments than recognized by his RFC determination. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

**II.        The ALJ's RFC Determination is Not Supported by Substantial Evidence**

As noted above, the ALJ concluded that Plaintiff retains the ability to perform light work subject to certain limitations. Plaintiff asserts several arguments that the ALJ's RFC determination is deficient, only one of which the Court finds persuasive.

First, Plaintiff faults the ALJ for failing to afford the proper significance to "reaching, handling, and grasping limitations proven in the record." While Plaintiff is correct that Dr. Griffith, during an April 11, 2009 examination, found that he was experiencing difficulty using his right upper extremity, subsequent examinations revealed that Plaintiff was experiencing no such difficulty. (Tr. 230, 289, 274). The ALJ is tasked with resolving these sorts of evidentiary conflicts and the ALJ's resolution of this particular conflict is supported by substantial evidence. Accordingly, this argument is rejected.

Plaintiff argues that the ALJ failed to "address the effect of [Plaintiff's] episodic gout flareups." Plaintiff testified at the administrative hearing that since he began taking medication to

11

treat his gout, he only experienced episodes of gout "once or twice" yearly, but that each episode lasted for approximately 4-6 weeks. (Tr. 43). In a March 12, 2009 Function Report, Plaintiff reported that when he experiences gout he has to use a walker to ambulate. (Tr. 171). The record simply does not support that Plaintiff experiences such extreme limitations as a result of his episodic gout. This argument is, therefore, rejected.

As part of Plaintiff's application for benefits, a state agency physician assessed Plaintiff's RFC, concluding, among other things, that Plaintiff's ability to perform postural activities (e.g., stoop, kneel, crouch, etc.) was compromised. (Tr. 245). Plaintiff asserts that because the ALJ determined that "this opinion was consistent with his RFC finding," he was somehow obligated to adopt these particular postural limitations into his RFC determination. Plaintiff's argument fails for two reasons.

First, the ALJ did not conclude that the state agency physician's opinion was consistent with his RFC finding. Instead, the ALJ concluded that the state agency physician's opinion was "consistent with the ultimate finding that the claimant is not disabled." (Tr. 24). Moreover, Plaintiff has identified no authority that obligates the ALJ adopt a physician's opinion simply because the ALJ finds such to be "consistent" with his own findings or conclusions. Accordingly, this argument is rejected.

Finally, Plaintiff argues that the ALJ's RFC determination is improperly vague. Specifically, Plaintiff takes issue with the ALJ's finding that he "cannot perform prolonged walking." Defendant is correct that Plaintiff has failed to identify (and the Court has not located) authority which obligates the ALJ to articulate his RFC to a certain standard of specificity. The shortcoming with this aspect of the ALJ's RFC determination is not that such fails to satisfy some

arbitrary standard of specificity, but rather that, due to its lack of specificity, the ALJ's RFC determination is simply not supported by substantial evidence.

The ALJ found that Plaintiff could perform light work, so long as he not perform "prolonged walking" activities. Light work involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567(b). Sedentary work, on the other hand, requires only "occasional[]" walking and standing. 20 C.F.R. § 404.1567(a). Thus, as Defendant asserts, with respect to Plaintiff's ability to walk the ALJ "determined that Plaintiff's ability to walk was reduced from what is typically required of light work. . .but not so severe as to reduce his RFC to the sedentary level."

While this assessment is not inaccurate, there nevertheless exists a significant gulf between walking "approximately 6 hours of an 8-hour workday" and walking only "occasionally." Because the ALJ failed to indicate with any specificity where along this spectrum Plaintiff's abilities lie, the Court must evaluate the ALJ's RFC as if the limitation of "no prolonged walking" inhabits the entire space between these two extremes. While the conclusion that Plaintiff can perform walking activities slightly more than occasionally is supported by substantial evidence, the conclusion that Plaintiff can perform walking activities for a length of time approaching 6 hours during an 8-hour workday is not supported by substantial evidence. While Plaintiff may have exaggerated the impact that gout has on his ability to walk, the record likewise does not support the ALJ's conclusion that Plaintiff can, despite experiencing lengthy bouts of gout, performing walking activities for the majority (or more) of a work day is not supported substantial evidence. Accordingly, the Court concludes that the ALJ's RFC is not supported by substantial evidence.

**III.        The ALJ's Conclusion that Plaintiff can Perform his Past Relevant Work is not Supported by Substantial Evidence**

At the outset of the administrative hearing, the ALJ questioned Plaintiff about his past relevant work. (Tr. 38-41). Plaintiff testified that his past relevant work as an assembler was "a standing job." (Tr. 40). This testimony is consistent with other evidence submitted by Plaintiff indicating that this particular job required him to stand/walk for the majority of the work day. (Tr. 179). While the ALJ questioned Plaintiff about his past relevant work as a cashier, the ALJ did not elicit from Plaintiff testimony regarding the extent to which that job required him to stand and walk. (Tr. 38-41). Plaintiff did submit evidence, however, that this job required him to stand/walk at least 6 hours daily. (Tr. 182).

At the outset of his testimony, the vocational expert was asked to describe Plaintiff's "past work as to skill and exertional levels." (Tr. 50). In response, the vocational expert characterized Plaintiff's past work as a cashier as "light and unskilled" and Plaintiff's past work as an assembler as "light." (Tr. 50). The vocational expert then testified that if Plaintiff were limited to the extent recognized by the ALJ, Plaintiff would still be able to perform his past relevant work as a general assembler and convenience store clerk. Relying on this testimony, the ALJ determined that Plaintiff was not entitled to benefits because he could still perform his past relevant work. This determination, however, is not supported by substantial evidence.

A determination that a claimant can perform his past relevant work can be based upon a determination that the claimant can either perform his past relevant work as he actually performed it or that the claimant can perform his part relevant work as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); *see also*, *Adams v. Colvin*, 2013 WL 7020485 at *5 (N.D.

14

Ohio, Nov. 25, 2013). Neither the vocational expert nor the ALJ specified whether he was concluding that Plaintiff could perform his past relevant work as he actually performed it or as it is generally performed in the national economy. This oversight is of no consequence, as neither conclusion is supported by substantial evidence.

The ALJ concluded that Plaintiff could perform light work subject to certain limitations, one of which was that he "cannot perform prolonged walking." The evidence of record, as discussed above, indicates that Plaintiff's past relevant work as a cashier and assembler required Plaintiff to perform "prolonged walking." Thus, there is not substantial evidence to support a conclusion that Plaintiff, if limited to the extent recognized by the ALJ, can perform his past relevant work as he actually performed it. The Court reaches the same conclusion when examining Plaintiff's past relevant work as it is performed in the national economy.

The vocational expert testified that his responses were consistent with the Dictionary of Occupational Titles (DOT). (Tr. 52). A review of the DOT, however, reveals that Plaintiff's past relevant work as a cashier and assembler, as such is performed in the national economy, is inconsistent with the conclusion that Plaintiff cannot perform prolonged walking. According to the DOT, the job of "assembler, small products" is characterized as a "light" job. *See* Assembler, Small Products, available at http://www.occupationalinfo.org/70/706684022.html (last visited on September 17, 2014). The DOT likewise characterizes the jobs of "cashier-checker" as a "light" job. *See* Cashier-Checker, available at http://www.occupationalinfo.org/21/211462014.html (last visited on September 17, 2014). According to the DOT, jobs in the "light" category may "require[] walking or standing to a significant degree." *See* Appendix C, Physical Demands - Strength Rating, available at http://www.occupationalinfo.org/appendxc_1.html#STRENGTH (last visited on September 17,

2014). While the ALJ may very well have been able to resolve this conflict through further questioning of the vocational expert, the ALJ made no attempt to do so. In sum, the ALJ's conclusion that Plaintiff can perform his past relevant work as a cashier and assembler is not supported by substantial evidence.

**IV.      Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). Plaintiff argues that he is entitled to benefits because he must be found disabled pursuant to the grids at Step V of the sequential evaluation process. The Court disagrees.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00.

Plaintiff was 56 years of age on his alleged disability onset date which for purposes of the Grids is characterized as a "person of advanced age." *See* 20 C.F.R. § 404.1563(e). The ALJ

limited Plaintiff to a range of light work, which corresponds to Rule 202.00 of the Grids. Whether Plaintiff is considered disabled under this particular Rule, however, depends on how his education and previous work experience is characterized. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, §§ 202.04-202.08. The ALJ did not explore these particular issues because he found Plaintiff not disabled at Step 4 of the sequential process. Thus, a determination of whether Plaintiff is disabled pursuant to the Grids requires the type of fact finding which the Court is neither competent nor authorized to make.

Moreover, it must be remembered that the issue of whether Plaintiff is disabled pursuant to the Grids does not become an issue until Step 5 of the sequential process. *See, e.g., Fetters v. Commissioner of Social Security*, 160 Fed. Appx. 462, 463 (6th Cir., Dec. 21, 2005). As discussed above, the determination whether Plaintiff can perform his past relevant work, a Step 4 determination, must first be resolved before even assessing whether Plaintiff is disabled pursuant to the Grids. This determination, likewise, requires the sort of fact finding which the Court is not permitted to make. Accordingly, this matter must be remanded to the Commissioner for further consideration.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date:  September 23, 2014                         /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge